ROB BONTA
Attorney General of California
LARA HADDAD, State Bar No. 319630
Supervising Deputy Attorney General
JENNIFER E. ROSENBERG, State Bar No. 275496
SHIWON CHOE, State Bar No. 320041
CHRISTOPHER J. KISSEL, State Bar No. 333937
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6388
  E-mail:  Christopher.Kissel@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **NETCHOICE, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California,**<br><br>Defendant. | No. 5:24-cv-07885-EJD<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:      December 17, 2024<br>Time:     9:00 a.m.<br>Courtroom:  4 (Fifth Floor)<br>Judge:    The Honorable Edward J. Davila<br>Trial Date:  None set.<br>Action Filed: November 12, 2024 |

# INTRODUCTION

On December 6, 2024, the Court ordered the parties to submit supplemental briefing on whether Plaintiff has associational standing on behalf of its members to raise an as-applied challenge to the Act. It does not. Plaintiff, an internet trade association, brings an as-applied challenge that is rooted in factual circumstances specific to five of its members. But Plaintiff itself argues that those members have significantly different features and functions, which the Act may affect in significantly different ways. Plaintiff's as-applied challenge therefore is not subject to proof in a group context; instead, it requires the participation of individual members in the suit, which precludes associational standing. Because Plaintiff lacks associational standing to bring an as-applied challenge, it is unlikely to succeed on the merits of that challenge.

# PLAINTIFF LACKS ASSOCIATIONAL STANDING TO BRING ITS AS-APPLIED CHALLENGE

"At the preliminary injunction stage, the [P]laintiff[] 'must make a clear showing of each element of standing[.]'" *LA All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (quoting *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (per curiam)). To determine whether a plaintiff has standing, the Court considers the Complaint and all other evidence the plaintiff has submitted in support of its motion. *Id.* at 957 (quoting *City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019)).

"While 'a facial challenge is a challenge to an entire legislative enactment or provision,' an as-applied challenge is a challenge to 'the application of the statute to a specific factual circumstance.'" *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1034 (N.D. Cal. 2017) (quoting *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011)). Plaintiff claims to bring an as-applied challenge to the Act on behalf of five of its members: "(1) Google, which owns and operates YouTube; (2) Meta, which owns and operates Facebook and Instagram; (3) Nextdoor; (4) Pinterest; and (5) X." Complaint at ¶ 15.

An organization has associational standing to sue on behalf of its members when: (1) its members would have standing in their own right; (2) the interests it seeks to protect are germane to its purpose; and (3) neither the claim asserted, nor relief requested, requires the participation of

individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The third prong has been classified as "prudential," but that does not "rob it of its value." *United Food and Com. Workers Union Loc. 751 v. Brown Group*, 517 U.S. 544, 556 (1996). Plaintiff argues that it has associational standing because "(1) some NetChoice members would have individual standing to sue in their own right; (2) challenging the Act is germane to NetChoice's purpose; and (3) members' individual participation is unnecessary in this purely legal challenge." Complaint at ¶ 14.

### I. *ASSOCIATION OF CHRISTIAN SCHOOLS V. STEARNS* COUNSELS AGAINST PLAINTIFF'S ASSOCIATIONAL STANDING TO BRING AN AS-APPLIED CHALLENGE

Plaintiff's claim of associational standing to bring its as-applied challenge fails because the proof required to establish it cannot be offered in a "group context." *Hunt*, 432 U.S. at 344. The district court's decision in *Association of Christian Schools v. Stearns*—which was affirmed by the Ninth Circuit—demonstrates the problems with Plaintiff's particular as-applied claims. In *Stearns*, the plaintiff was a consortium of religious high schools. *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 983 (C.D. Cal. 2008), *aff'd*, 362 F. App'x 640 (9th Cir. 2010). It brought an as-applied First Amendment challenge to the University of California's refusal to consider, as part of the admissions process, students' performance in 36 classes offered at the consortium's member schools. *Id.*

The district court rejected the plaintiff's claim of associational standing on two grounds particularly relevant to the as-applied challenge here. *Id.* at 984–86. First, the court explained that there can be no associational standing when a plaintiff organization brings claims that "are not common to the entire membership, nor shared by all in equal degree." *Stearns*, 678 F. Supp. 2d at 983 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). The University of California's decisions to deny 36 specific classes were necessarily not "common to the entire membership." *Id.* So too here. Plaintiff's challenge is limited to five of its members, excluding many members such as Airbnb, Netflix, StubHub, Lyft, and others. *See* Cleland Decl. ¶ 4. Plaintiff thus does not even attempt to allege that its claims are "common to the entire membership."

Second, the district court explained that there can be no associational standing when a

plaintiff organization brings claims that "require an 'ad hoc factual inquiry' for each member represented by the association." *Stearns*, 678 F. Supp. 2d at 986 (quoting *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993)). That conclusion foreclosed the plaintiff's associational standing because each of the 36 denials at issue required an "ad hoc inquiry" to assess their constitutionality. *See id.* And it forecloses Plaintiff's associational standing here as well. Plaintiff has based its as-applied claim on the Act's alleged future effects on just five of its members and it has failed to show that those five will be affected in the same way. For example, it offers opinions from two declarants about how they believe Meta and Google will be affected by the Act. But those declarations only demonstrate how different those platforms are, and how different the as-applied constitutional inquiry must be from platform to platform. *See*, *e.g.*, Davis Decl. ¶ 60 (discussing potential effect on Facebook's "marked safe" alerts); Veitch Decl. ¶ 45 (discussing potential effect on YouTube's ability to "let [users] know when there are new videos and updates from [their] favorite channels").

  Moreover, very little is known about how members' respective content-recommendation algorithms work, *see* Egelman Decl. ¶ 32—there is nothing in the record to illuminate that process, or to show, for instance, how they differ from platform to platform. Opp. at 10–12. But inquiry into that question must proceed on a platform-by-platform basis because it bears on matters as fundamental as what effect the Act may have on each platform and what level of First Amendment protection those mechanisms should receive, if any. *See*, *e.g.*, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2436 (2024) (Alito, J., concurring in the judgment) ("[A]t this stage and on this record, we have no way of confirming whether all of the regulated platforms use algorithms to organize all of their content, much less whether these algorithms are expressive."). The same is true, for example, of the notifications those platforms send. Plaintiff offers evidence that each of the five members send notifications. Cleland Decl. ¶ 9. But there are more questions to be answered—including whether any, or all, of those platforms send notifications to minors, and if so, what material those notifications contain.

  And as to Nextdoor, Pinterest, and X, Plaintiff offers nothing beyond the acknowledgement that they send some type of notifications, Cleland Decl. ¶ 9, plus a single sentence each about

how the platforms are used, *e.g.*, *id*. at ¶ 6 ("On Pinterest, users can discover ideas for recipes, style, home decor, motivation, and more."). In short, many "ad hoc factual inquires" will be necessary to determine whether any as-applied relief is warranted, a fact that precludes Plaintiff from establishing associational standing to assert its as-applied claims.

The *Stearns* court rejected the plaintiff's claim of associational standing on a third ground as well—one that underscores another, different problem with Plaintiff's as-applied challenge. The consortium had argued that it had associational standing because it brought a claim for declaratory relief. *Stearns*, 678 F. Supp. 2d at 985. The court explained that the declaratory relief it sought—approval by the university of its members' 36 classes—was "individualized" and thus could not be resolved in a "group context." *Id.* Here, by contrast, Plaintiff's sought-after relief reveals that its challenge is really a facial one: the relief it seeks is not individualized but rather completely *generalized*. *See, e.g.*, Complaint at p. 31 (seeking declaration "that California Senate Bill 976 is unlawful"); *id.* at p. 32 (seeking declaration that "§§ 27000.5(b), 27001, 27002, 27005, and 27006(b)-(c) violate the First Amendment to the Constitution"). That Plaintiff seeks generalized relief, rather than anything addressed specifically to the five members on whose behalf it brings its as-applied challenge, belies the idea that there is any as-applied challenge at all. A complaint that seeks relief "reach[ing] beyond the particular circumstances of these plaintiffs" must be analyzed as a facial challenge, not an as-applied challenge. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).

The Ninth Circuit's affirmance in *Stearns* likewise supports the conclusion that Plaintiff lacks associational standing. The court emphasized that "[t]he plaintiffs' as-applied claims and the relief they seek, although equitable in nature, both require 'individualized proof' specific to each rejected course and the school that offered it." *Ass'n of Christian Sch. Int'l v. Stearns*, 362 F. App'x 640, 644 (9th Cir. 2010). The same is true here. Among the five members on whose behalf Plaintiff brings its as-applied challenge, material, member-specific questions preclude disposition in a group context. *Hunt*, 432 U.S. at 344. Because those "ad hoc factual inquiries" are necessary to determine whether as-applied relief is warranted in this case, they preclude Plaintiff from asserting associational standing concerning its as-applied claims.

4

## II. OTHER CASES ACCORD WITH THE CONCLUSION THAT PLAINTIFF CANNOT DEMONSTRATE ASSOCIATIONAL STANDING FOR ITS AS-APPLIED CHALLENGE

The Ninth Circuit and other federal courts have continually rejected associational standing concerning similar as-applied claims. For example, the Ninth Circuit has rejected a claim of associational standing by an organization of ERISA claimants asserting the wrongful withholding of certain payments. *Spinedex Physical Therapy v. United Healthcare of Ariz.*, 770 F.3d 1282, 1287 (9th Cir. 2014). The court explained that "an association has standing only to seek relief that would not require the participation of its individual members," and the variegated circumstances surrounding the withheld payments required each claimant's participation. *Id.* at 1292–93. In the First Amendment speech context, the Third Circuit has concluded there was no associational standing for adult film trade associations challenging a law requiring age and identity verification of performers. *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 974 F.3d 408, 413–14 (3d Cir. 2020). The claims were based on the law's "application to a particular person under particular circumstances" and thus "require[d] an individualized inquiry for each association member." *Id.* And the Fifth Circuit examined a Free Exercise claim requiring the plaintiff to show how the law "operate[d] against him," rather than rely on arguments about the enactment's scope. *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009) (quoting *Harris v. McRae*, 448 U.S. 297, 321 (1980)). The involvement of members who suffered that "coercive effect" was essential to the case, precluding associational standing. *Id.* at 134–35.

## III. THE CASES PLAINTIFF CITES DO NOT SUPPORT AN ALTERNATE CONCLUSION

Plaintiff cites five district court cases to support its allegation of associational standing. Complaint at ¶ 14. Four of those cases are inapposite because they did not involve an as-applied challenge. *NetChoice, LLC v. Reyes*, No. CV 23-00911-RJS-CMR, 2024 WL 4135626, at *8 (D. Utah Sept. 10, 2024); Complaint at ¶ 58, *NetChoice, LLC v. Fitch*, No. CV 24-170-HSO-BWR, 2024 WL 3276409 (S.D. Miss. July 1, 2024), ECF No. 1; Complaint at ¶ 11, *NetChoice, LLC v. Yost*, 716 F. Supp. 3d 539 (S.D. Ohio 2024), ECF No. 1; *see generally* Complaint, *NetChoice, LLC v. Griffin*, No. CV 23-05105, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023), ECF No. 2.

The fifth case only helps to show why Plaintiff's as-applied associational standing

argument fails. There, the district court concluded that Plaintiff had associational standing to bring an as-applied challenge to a statute. *Comput. & Commc'ns Indus. Ass'n v. Paxton*, No. CV 24-849-RP, 2024 WL 4051786, at *9 (W.D. Tex. Aug. 30, 2024). But the court did so because the statute "impose[d] relatively uniform requirements on all [p]laintiffs' covered members." *Id.* The court did not cite authority to support that conclusion. In fact, it seemed to rely on its detailed analysis, in the paragraphs above, relating to plaintiffs' *facial* challenge, where it explained that the predominantly legal nature of plaintiffs' case meant individual participation by plaintiffs' members was not required. *Id.* at *8–9. That erroneous conclusion—that associational standing exists in facial *and* as-applied contexts when a plaintiff's case is fundamentally legal rather than factual—seems to inform Plaintiff's allegation here that its members need not participate individually because its case is a "purely legal challenge." Complaint at ¶ 14.

In contrast, Plaintiff's as-applied challenge here is not "purely legal." It is based on "specific factual circumstance[s]" *Hoye*, 653 F.3d at 857—namely, the effect of the Act's actual enforcement on a few of Plaintiff's individual members. That distinguishes Plaintiff's challenge from the facial challenges at issue in cases like *Virginia v. American Booksellers Association*, which hinged on the scope of a law rather than its specific applications to particular individuals. 484 U.S. 383, 388, 396 (1988). Indeed, it is because of the sweeping scope of available relief in facial cases that the Supreme Court has made them so "hard to win," requiring plaintiffs to show a substantial imbalance between a statute's constitutional and unconstitutional applications. *Moody*, 144 S. Ct. at 2397; Opp. at 7–8.

Plaintiff's as-applied challenge on behalf of five members presents a different obstacle. Its evidence underscores the distinctiveness of the platforms operated by two of its members, Meta and Google; as to the other three, Plaintiff offers hardly any evidence at all. *See supra* at 3–4. Both issues highlight the "individualized proof" required to succeed on Plaintiff's as-applied claim, precluding associational standing as to that claim. *Stearns*, 362 F. App'x at 644.

## CONCLUSION

Plaintiff is unlikely to succeed on the merits of any as-applied challenge because it lacks associational standing to assert such a challenge.

6

Defendant's Supplemental Brief (5:24-cv-07885-EJD)

Dated: December 11, 2024

Respectfully submitted,

R<span>OB</span> B<span>ONTA</span>
Attorney General of California
L<span>ARA</span> H<span>ADDAD</span>
Supervising Deputy Attorney General
J<span>ENNIFER</span> E. R<span>OSENBERG</span>
S<span>HIWON</span> C<span>HOE</span>
Deputy Attorneys General


*/s/ Christopher J. Kissel*
C<span>HRISTOPHER</span> J. K<span>ISSEL</span>
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of California*