1    ROB BONTA
     Attorney General of California
2    LARA HADDAD, State Bar No. 319630
     Supervising Deputy Attorney General
3    JENNIFER E. ROSENBERG, State Bar No. 275496
     SHIWON CHOE, State Bar No. 320041
4    CHRISTOPHER J. KISSEL, State Bar No. 333937
     Deputy Attorneys General
5      300 South Spring Street, Suite 1702
       Los Angeles, CA  90013-1230
6      Telephone:  (213) 269-6388
       E-mail:  Christopher.Kissel@doj.ca.gov
7    *Attorneys for Defendant Rob Bonta, in his official*
     *capacity as Attorney General of California*

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

| 13 | **NETCHOICE, LLC** | 5:24-cv-07885-EJD |
|---|---|---|
| 14 | Plaintiff, | |
| 15 | **v.** | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN INJUNCTION PENDING APPEAL** |
| 16 | | |
| 17 | **ROB BONTA, in his official capacity as Attorney General of California,** | |
| 18 | Defendant. | Date:      N/A<br>Time:      N/A<br>Dept:      4 (Fifth Floor) |
| 19 | | Judge:     The Honorable Edward J. Davila<br>Trial Date:   None set. |
| 20 | | Action Filed: November 12, 2024 |

21

22

23

24

25

26

27

28

Defendant Attorney General Rob Bonta respectfully submits this opposition to Plaintiff's Motion for an Injunction Pending Appeal. Dkt. # 42. Plaintiff requests extremely expedited relief—specifically, that the Court rule on its motion in one day, by January 2, 2025—without any showing that such expedited consideration is warranted. Plaintiff has also failed to adhere to the procedural requirements for seeking relief on an *ex parte* or emergency basis, which is an adequate ground to deny the motion.

In any event, Plaintiff fails to meet the standards for an injunction pending appeal. Its request for an injunction pending appeal is subject to the same standard that the Court concluded, just yesterday, Plaintiff could not satisfy with respect to the provisions at issue. Nothing has changed in the day that has elapsed. Plaintiff does not proffer any new argument or additional evidence to demonstrate that it is likely to prevail on the merits of its claims or that it would suffer irreparable harm absent emergency relief. The Court should therefore deny an injunction pending appeal for the same reasons it has denied a preliminary injunction, and for those set forth both below and in the Attorney General's opposition to the motion for a preliminary injunction. *See* Dkt. # 18.

## PROCEDURAL BACKGROUND

On September 20, 2024, Governor Gavin Newsom signed the Protecting Our Kids From Social Media Addiction ("the Act") into law, with certain provisions that took effect on January 1, 2025. On November 12, 2024, Plaintiff filed a complaint against the Attorney General challenging the constitutionality of the Act. Dkt # 1. Plaintiff also moved for a preliminary injunction. Dkt # 2. A hearing was held on December 17, 2024, and on December 31, 2024, this Court partly granted and partly denied the motion. Dkt. # 39. As relevant here, the Court denied Plaintiff's motion to preliminarily enjoin two parts of the Act, set forth in California Health & Safety Code sections 27001 and 27002(b)(2)-(5), regarding restrictions on addictive feeds and certain required default settings for minor users. Plaintiff now moves for an injunction against enforcement of those provisions pending appeal to the Ninth Circuit, and requests that a ruling issue within the next day. Dkt. # 42.

**ARGUMENT**

**I.    PLAINTIFF HAS NOT SATISFIED THE REQUIREMENTS FOR EMERGENCY RELIEF**

The Court should not consider Plaintiff's motion for an injunction on an emergency or *ex parte* basis because Plaintiff has not even acknowledged, let alone satisfied, the requirements for such relief. All motions filed in the Northern District of California must be "filed, served and noticed in writing on the motion calendar of the assigned Judge for hearing not less than 35 days after filing of the motion," "[e]xcept as otherwise ordered or permitted by the assigned Judge or these Local Rules." L.R. 7-2(a). Plaintiff has not sought or received such permission; rather, its motion is "a 'hybrid' form of *ex parte* communication: a request for action by the court made outside the framework of the rules." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). And Plaintiff has failed to comply with the requirements for *ex parte* motions in this District, *see* L.R. 7-10, instead representing that it will file an amended notice at a later time. Plaintiff's failure to properly notice its motion is sufficient grounds for denying emergency relief. *See Moore v. Chase, Inc.*, No. 1:14-CV-01178-SKO, 2015 WL 4636750, at *3 (E.D. Cal. Aug. 3, 2015) (denying *ex parte* motion based on procedural defect).

Even when a party brings a procedurally proper *ex parte* motion, it still "must show two things to justify *ex parte* relief: first, that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures; and second, 'that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.'" *Caldwell v. Wells Fargo Bank, N.A.*, No. 13-CV-1344-LHK, 2013 WL 3789808, at *3 (N.D. Cal. July 16, 2013) (quoting *Mission Power*, 883 F. Supp. at 492). Plaintiff has not met either requirement here.

As to the first required showing, Plaintiff has not demonstrated that it will suffer prejudice if its motion is not heard on an expedited basis. Plaintiff contends that it will suffer "compliance costs" (Mot. at 9), but does not even attempt to show that any such costs will be "insurmountable" for the period it would take to consider a properly noticed motion. Moreover, whether a party will suffer irreparable prejudice absent emergency relief can be intertwined with the underlying merits of the case; if the case is meritless, denial of emergency relief cannot be prejudicial. *See Mission*

3

*Power*, 883 F. Supp. at 492. Here, the Court already concluded that the portions of the law that Plaintiff now seek to enjoin on an emergency basis are likely constitutional, on the record assembled to date. Dkt. # 39. The briefing below and the Attorney General's opposition brief set forth additional reasons why Plaintiff's arguments are meritless. *See generally* Dkt. # 18. Because this Court has already ruled against Plaintiff on those points, and Plaintiff's fail to identify any new arguments or evidence, there is no basis to conclude, now, that Plaintiff will suffer prejudice if its motion is not granted on an emergency basis.

As to the second required showing, Plaintiff fails to meet it because this is an "emergency" of its own making. The closeness in time between the issuance of the Court's order partially denying Plaintiff's motion and the effective date of the Act is largely the result of Plaintiff's delay in bringing this case. The Act was signed into law by the Governor of California on September 20, 2024, yet Plaintiff waited until November 12, 2024, nearly two months later, to file its complaint and seek an injunction barring its enforcement. Plaintiff also failed to notify the Court in any of its prior briefing that it would seek an injunction pending appeal if it did not obtain all the relief requested in the preliminary injunction motion.

## II. PLAINTIFF HAS NOT PROVIDED ANY NEW ARGUMENT OR EVIDENCE NOT ALREADY IN THE RECORD TO SHOW THAT IT IS ENTITLED TO AN INJUNCTION PENDING APPEAL

Plaintiff's motion rehashes arguments the Court has correctly rejected and seeks, in practical effect, reconsideration of the Court's order denying the injunction in part. Plaintiff has failed to cite any intervening (or new) factual or legal developments that would warrant a different outcome. It has provided no information or argument that has not already been considered and found lacking by this Court. "The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *See Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). It is, therefore, "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). The Court has already concluded, in a thoroughly reasoned order, that Plaintiff cannot satisfy the standard for a preliminary injunction, on the record that has been assembled, at this stage in the case. If Plaintiff

4

could not do so on December 31, it cannot do so on January 2, particularly without any new arguments or evidence.

### A.    Plaintiff Cannot Show a Likelihood of Success on the Merits

Plaintiff raises five substantive arguments related to its likelihood of success on the merits of its claims. Each argument repeats arguments already made in its preliminary injunction motion, and each should be rejected for, *inter alia*, the reasons stated in the Court's December 31 order.

Plaintiff starts by rehashing its top-line arguments against the Act. *See* Dkt. 42 at 3 (section A). The Court addressed those arguments in its December 31 order and Plaintiff's conclusory recitation here, providing no new material, gives the Court no occasion to revisit those conclusions.

Second, Plaintiff continues to rely on its improper reading of *Moody v. NetChoice*, 603 U.S. 707 (2024), to argue that its members' content feeds are *per se* expressive activity. *See* Dkt. 42 at 3–6 (section B). The parties have thoroughly litigated the issue in this Court, and Plaintiff adds nothing new here. It quotes *Moody* at length, but none of the quoted material, largely shorn of important context, disturbs the fundamental rule that "[t]he touchstone of First Amendment speech rights is, after all, the protection of *expression*." Dkt. # 39 at 16 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011)). Rather than address why its members' feeds are necessarily expressive, NetChoice attempts to reduce the Supreme Court's nuanced opinion in *Moody* to a categorical rule that all feeds are expressive. But this Court properly rejected that argument, observing that the Supreme Court expressly declined to address in *Moody* whether "feeds whose algorithms respond solely to how users act online—giving them the content they appear to want, without any regard to independent content standards" always constitutes protected expression. Dkt. # 39 at 16 (quoting *Moody*, 603 U.S. at 736 n.5).

Third, Plaintiff argues—again in conclusory fashion—that its "uncontested record evidence" shows that it has associational standing to bring an as-applied challenge on behalf of five of its members. Dkt. 42 at 6–7 (section C). Plaintiff's evidence as to the associational standing inquiry certainly *is* contested. As the Attorney General's supplemental brief explained, only two of NetChoice's members provided *any* evidence about how they would be affected by

5

the Act, and those declarations highlight the deep factual inquiries the Court would need to undertake to adjudicate any as-applied challenge on behalf of those members. Dkt. 32 at 3 (citing Davis Decl. ¶ 60 (discussing potential effect on Facebook's "marked safe" alerts); Veitch Decl. ¶ 45 (discussing potential effect on YouTube's ability to "let [users] know when there are new videos and updates from [their] favorite channels").

Plaintiff's fourth merits argument, concerning the Act's requirements at sections 27002(b)(2) and 27002(4), combines conclusory statements about the expressiveness of its members' features with its improper understanding of *Moody* and First Amendment doctrine in general. Dkt. 42 at 7–8 (section D). As with its entire motion, Plaintiff raises no new arguments that call into question the Court's prior analysis.

Finally, Plaintiff's fifth merits argument, concerning its allegation of vagueness, does not actually explain what it finds substantively objectionable about the Court's conclusion and ignores the Court's reasoning. Instead, Plaintiff states only that the Court did not adequately consider Plaintiff's declarations. Dkt. 42 at 8 (section E). That is both inaccurate and insufficient for an injunction pending appeal.

In sum, the Court should reject Plaintiff's arguments on the merits for the same reasons it already did so in the December 31 order, as well as for those set forth above and contained in the Attorney General's opposition to the motion for a preliminary injunction. Plaintiff has not shown that it is likely to succeed on the merits of its claims as to the non-enjoined provisions, and thus cannot show a risk of irreparable harm absent emergency relief.

**B.    Plaintiff Cannot Show That Implementation of the Law's Requirements Risks Irreparable Injury**

Nor has Plaintiff shown, as a practical matter, that its members will suffer irreparable harm by complying with the non-enjoined provisions of the Act while the Court considers the merits of Plaintiff's claims. Plaintiff's argument is centered on compliance costs and the purported technological difficulty or infeasibility of changes its members must make to their websites, which Plaintiff describes as "uncontested." Dkt. 42 at 2. Not so. At the outset, "ordinary compliance costs are typically insufficient to constitute irreparable harm." *Freedom Holdings,*

*Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005). Moreover, as the Attorney General's unrebutted record evidence shows, compliance with the Act's requirements is both feasible and non-disruptive based on "technology that is already in widespread use." Egelman Decl. ¶ 50. The Act's addictive feed requirements, as set forth and defined in sections 27000.5 and 27001, "*involves simply modifying the algorithms that are already being used to curate content*. These algorithms already exist and . . . are often designed to consider personal information stored about the current user to make decisions." Egelman Decl. ¶ 51 (emphasis added). Implementing algorithms that do not use information provided by the minor or from the minor's device—for example, displaying posts chronologically instead of prioritizing the order of social media posts based on engagement metrics—"*should not be particularly onerous for social media providers to implement*; indeed, some social media networks already offer users the choice over how to algorithmically curate their feeds." Egelman Decl. ¶ 51 (emphasis added). For example, X offers users a choice between algorithmic recommendations from across the service or limiting content to followed accounts. Egelman Decl. ¶ 51. The same is true of the Act's other requirements, which are technically feasible to implement because many services, including some of NetChoice's members, already offer similar features. Egelman Decl. ¶ 53. Plaintiff has not submitted any evidence rebutting Defendant's expert declarations.

## C. The Balance of the Equities and the Public Interest Weigh Against an Injunction

Finally, enjoining any provisions that the Court has already concluded are constitutional would harm the public interest because it would hinder the State's ability to protect the mental and physical health of children, a vital government interest. *See* Dkt. # 39 at 26 ("[T]he Court finds that Defendant has established an important government interest: the protection of children's health.").

## CONCLUSION

The motion for an injunction pending appeal should be denied.

1    Dated:  January 1, 2025                    Respectfully submitted,

2                                              ROB BONTA
                                               Attorney General of California
3                                              LARA HADDAD
                                               Supervising Deputy Attorney General
4                                              JENNIFER E. ROSENBERG
                                               SHIWON CHOE
5                                              Deputy Attorneys General

6

7                                              */s/ Christopher J. Kissel*
                                               CHRISTOPHER J. KISSEL
8                                              Deputy Attorney General
                                               *Attorneys for Defendant Rob Bonta, in his*
9                                              *official capacity as California Attorney*
                                               *General*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR AN INJUNCTION PENDING APPEAL (5:24-cv-07885)