Steven P. Lehotsky*
Scott A. Keller*
Jeremy Evan Maltz*
Shannon G. Denmark*
**LEHOTSKY KELLER COHN LLP**
200 Massachusetts Avenue, NW, Suite 700
Washington, DC 20001
(512) 693-8350
steve@lkcfirm.com
scott@lkcfirm.com
jeremy@lkcfirm.com
shannon@lkcfirm.com

Joshua P. Morrow*
**LEHOTSKY KELLER COHN LLP**
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
josh@lkcfirm.com

Jared B. Magnuson*
**LEHOTSKY KELLER COHN LLP**
3280 Peachtree Road NE
Atlanta, GA 30305
(512) 693-8350
jared@lkcfirm.com

* Admitted *pro hac vice*.

*Attorneys for Plaintiff NetChoice*

Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETCHOICE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ROB BONTA, in his official capacity as Attorney General of California,<br><br>　　　　　Defendant. | Case No. 5:24-cv-07885-EJD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: March 13, 2025<br>Time: 10:00 am<br>Judge: Hon. Edward J. Davila<br>Courtroom: San Jose, Courtroom 4, 5th Floor |

**JOINT CASE MANAGEMENT STATEMENT**

After conferring on February 26, 2025, the parties submit this proposed case management order.

1. **Jurisdiction and service**

**Jurisdiction.** Plaintiff invokes this Court's subject-matter jurisdiction to consider Plaintiff's *facial* challenges under 28 U.S.C. §§ 1331 and 1343(a). It contends that this Court has authority to grant legal and equitable relief under 42 U.S.C. § 1983, injunctive relief under 28 U.S.C. § 1651, and declaratory relief under 28 U.S.C. § 2201(a).

Defendant disputes that Plaintiff NetChoice has standing to assert as-applied First Amendment claims on behalf of its members. Plaintiff NetChoice has argued that it has standing to assert the as-applied challenges at issue in this case.

**Venue.** Venue is proper in this District under 28 U.S.C. § 1391(b)(1) & (2).

**Service.** Defendant accepted service by e-mail on November 12, 2024, and no other parties remain to be served.

2. **Facts**

This case concerns California Senate Bill 976 (2024) ("Act" or "SB976"), which was enacted on September 20, 2024. NetChoice sued and moved for a preliminary injunction on November 12, 2024. ECF 1-2. Plaintiff NetChoice is an Internet trade association. Defendant Rob Bonta is sued in his official capacity as California Attorney General.

On December 31, 2024, this Court partially granted and partially denied NetChoice's motion for preliminary injunction. ECF 39. Specifically, this Court enjoined Defendant's enforcement of California Health and Safety Code §§ 27002(a), 27002(b)(1), and 27005. These provisions regulate the hours during which certain "internet-based service[s] or application[s]" may "send notifications to a [minor] user," Cal. Health & Safety Code §§ 27002(a), (b), and require such services to "publicly disclose" certain information, *id.* at § 27005.

NetChoice moved for an injunction pending appeal in this Court. ECF 42. This Court granted a 30-day injunction pending appeal. ECF 47 at 4.

The Ninth Circuit granted NetChoice's motion for injunction pending appeal in that court on January 28, 2025. ECF 58. As a result of the Ninth Circuit's order, Defendant is also enjoined

from enforcing the Act's remaining provisions related to minors' access to feeds on certain websites and certain default settings on minors' accounts on those websites. Cal. Health & Safety Code §§ 27001, 27002(b)(2)-(5).

In that same order, the Ninth Circuit also expedited NetChoice's appeal. ECF 58. That case is set for argument on April 2, 2025. *Id.*

### 3.   Legal issues

**Plaintiff's statement.** The Act's challenged provisions violate binding Supreme Court precedent and the consensus holding of courts nationwide. The Act's parental-consent requirements (Cal. Health & Safety Code §§ 27001(a), 27002(a), (b)(2)) restrict access to protected speech, defying the Supreme Court's recognition that governments lack the "power to prevent children from hearing or saying anything without their parents' prior consent." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 795 n.3 (2011) (emphasis omitted); *see NetChoice, LLC v. Fitch*, 738 F. Supp. 3d 753, 774-75 (S.D. Miss. 2024); *NetChoice, LLC v. Yost*, 716 F. Supp. 3d 539, 557-60 (S.D. Ohio 2024); *NetChoice, LLC v. Griffin*, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023); *see also NetChoice, LLC v. Reyes*, 2024 WL 4135626, at *13 & n.135 (D. Utah Sept. 10, 2024). And the Act's age-assurance requirement (Cal. Health & Safety Code §§ 27001(a)(1)(B), 27002(a)(2), 27006(b)-(c)) unconstitutionally restricts access to protected speech for both minors and adults. *See, e.g.*, *Ashcroft v. ACLU*, 542 U.S. 656, 667 (2004) (invalidating age-verification requirement); *Reno v. ACLU*, 521 U.S. 844, 882 (1997) (same); *Reyes*, 2024 WL 4135626, at *16 n.169 (same); *Fitch*, 738 F. Supp. 3d at 773-74 (similar); *Griffin*, 2023 WL 5660155, at *17 (similar).

Compounding the First Amendment violations, the Act imposes its speech regulations only on select websites by using a content-based, speaker-based, and vague coverage definition. *See* Cal. Health & Safety Code § 27000.5(b). That triggers strict scrutiny for all of the Act's speech regulations. The State's decision to pick favored and less favored websites based on the content of their speech and the identity of the speaker means that the Act's regulations are underinclusive and not appropriately tailored. In any event the State lacks a sufficient governmental interest to justify the Act's direct attack on online speech.

**Defendant's statement.** As a threshold matter, NetChoice's challenge to SB976's age-assurance requirement is unripe because the requirement does not go into effect until 2027. The Attorney General also has not yet promulgated required regulations that may further define the scope of the requirement. NetChoice also lacks standing to assert as-applied claims on behalf of its members. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

SB976 does not burden speech and therefore is not subject to First Amendment scrutiny. In any event, NetChoice's facial First Amendment claims require NetChoice to submit evidence showing how SB976's addictive-feed provisions (Cal. Health & Safety Code §§ 27000.5, 27001, 27002(b)(2)), notifications provisions (*id.* at §§ 27002(a), (b)(1)), and other default-setting provisions (*id.* at §§ 27002(b)(3), (5)) affect every potentially regulated platform and how their effects burden platform operators' constitutionally-protected speech. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 724–25 (2024). Even assuming NetChoice can make that showing, each of the provisions at issue are content-neutral because they do not restrict the topics, ideas, or messages that platforms express or host. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). The provisions are therefore subject—at most—to intermediate scrutiny. *See id.* at 76. Because those provisions are narrowly tailored to serve a compelling interest in protecting the health and wellbeing of minors without impacting protected speech, they easily withstand such scrutiny. *Id.* SB976's disclosure requirements are constitutional because, among other things, any burden on speech they create is at most incidental to SB976's regulation of conduct. See *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). SB976 is not unconstitutionally vague because a reasonable person can comprehend what its provisions require. *See Arce v. Douglas*, 793 F.3d 968, 988 (9th Cir. 2015).

**4.    Motions**

There is one motion outstanding: On January 29, 2025, Plaintiff filed an opposed motion to stay proceedings, which is set for hearing on March 13, 2025. ECF 59. That motion has been fully briefed since February 18, 2025. ECF 63. It is set for hearing the same day as the initial case management conference: March 13, 2025.

3

**JOINT CASE MANAGEMENT STATEMENT**

**5.     Amendment of pleadings**

The parties currently do not contemplate amending the pleadings to add parties, claims, or defenses. Nevertheless, the parties agree that any motions to amend or to add parties shall be filed no later than one month before the close of fact discovery and acknowledge that the granting of such a motion will require some deadlines to be revised and further deadlines to be set to accommodate discovery related to any amendments.

**6.     Evidence preservation**

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred regarding the preservation and discovery of ESI. The parties do not anticipate any issues regarding or disputes over ESI in this case.

**7.     Disclosures**

The parties have not yet exchanged initial disclosures. The parties' respective proposals for the deadline to exchange initial proposals are outlined below in the parties' scheduling proposals.

**8.     Discovery**

The parties have not engaged in any discovery thus far, and they disagree about when discovery should begin and how long it should take.

**Plaintiff's position.** Discovery should not begin in this case until after appellate proceedings have concluded. That is why NetChoice has moved for a stay of proceedings pending appeal. *See* ECF 59, 63. The Ninth Circuit will issue a binding, precedential opinion that outlines the necessary legal inquiries in this case. Those inquiries, in turn, determine the scope of facts that are relevant to NetChoice's claims and Defendant's defenses. Accordingly, NetChoice proposes that the parties confer about a discovery schedule and the scope of discovery after appellate proceedings are completed and the parties and Court have a full and complete understanding of the governing law.

**Defendant's position.** The Attorney General does not believe that the pending appeal prevents the parties from working to illuminate First Amendment questions that this Court has acknowledged are substantially fact-bound. "[B]ecause the fully developed factual record may be

4

**JOINT CASE MANAGEMENT STATEMENT**

materially different from that initially before the district court, [the Ninth Circuit's] disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits." *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018). Accordingly, it should be *more* efficient, not less, to proceed to discovery now. That is particularly so given the wide-ranging factual showing Plaintiff must make at the threshold to advance its facial claims.

### 9. Class and collective actions

Plaintiff has not sought, and does not intend to seek, class or collective action certification.

### 10. Related cases

There are no related cases and the parties are presently unaware of any cases that should be deemed related.

### 11. Relief

Plaintiff has requested declaratory and injunctive relief, prohibiting Defendant and his agents, employees, and all persons acting under their direction or control from taking any action to enforce the Act or the challenged portions of the Act against Plaintiff or its members.

Plaintiff has also requested attorneys' fees and costs incurred in bringing this action, including attorneys' fees and costs under 42 U.S.C. § 1988(b) for successful 42 U.S.C. § 1983 claims against state officials.

### 12. Settlement and ADR

The parties do not believe that settlement is likely or that an alternative dispute resolution process would address the remaining issues in this case. Nevertheless, the parties will continue to confer throughout the case about these issues.

### 13. Other references

The parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 14. Narrowing of issues

The parties have conferred and have not yet identified ways to narrow the outstanding issues in the case. But the parties will continue to confer throughout the case.

**Plaintiff's statement.** Attempts to narrow the issues would benefit from guidance from the Ninth Circuit. It is possible that the Ninth Circuit's resolution of the appeal will provide greater opportunity for the parties to narrow the factual and legal issues in dispute. This likewise counsels in favor of granting NetChoice's pending motion to stay proceedings.

**Defendant's statement.** The Attorney General does not expect the Ninth Circuit's ruling to result in any significant changes to the factual and legal issues. The Attorney General contends that **the question of how SB976 may or may not affect any purported First Amendment interests** may be expedited by the immediate commencement of discovery (which additionally may permit the parties to identify facts or issues to which they may stipulate).

**15.    Scheduling**

**Plaintiff's statement.** As explained above and in Plaintiff's motion to stay proceedings, the parties and Court should wait for the resolution of NetChoice's pending (and expedited) Ninth Circuit appeal before setting any future deadlines in this case.

At a minimum, the relevant deadlines imposed in this case should be pegged to the date the appeal is remanded to this Court—to avoid the possibility that proceedings in this Court could overrun the proceedings in the Ninth Circuit:

- **Last Day to Serve Initial Disclosures** – 21 days after remand
- **Last Day to Serve Written Discovery and Deposition Notices (Other Than Experts)** – 21 days after initial disclosures (42 days after remand)
- **Last Day to Serve Opening Expert Reports** – 30 days after last day to serve (72 days after remand)
- **Last Day to Serve Rebuttal Expert Reports** – 30 days after opening expert reports (102 days after remand)
- **Last Day to Serve Sur-Rebuttal Expert Reports** – 30 days after rebuttal reports (132 days after remand)
- **Last Day to Serve Deposition Notices (Experts)** – 7 days after rebuttal reports (139 days after remand)
- **Last Day to Hear Discovery Motions** – 21 days after last day to serve expert deposition notices (159 days after remand)
- **Fact and Expert Discovery Cut Off** – 21 days after discovery motions (181 days after remand)
- **Last Day to File Motions for Summary Judgment and All Other Motions (except *Daubert* and all other Motions in Limine)** – 30 days after close of all discovery (211 days after remand)

- **Last Day to File Oppositions to Motions for Summary Judgment and All Other Motions (except *Daubert* and all other Motions in Limine)** – 30 days after motions (241 days after remand)
- **Last Day to File Replies in Support of Motions for Summary Judgment and All Other Motions (except *Daubert* and all other Motions in Limine)** – 30 days after oppositions (271 days after remand)

**Defendant's statement.** Discovery should proceed immediately to move the case efficiently and begin to illuminate the constitutional questions implicated by NetChoice's complaint.

**Defendant's proposed schedule:**

- **Deadline to Answer the Complaint**—March 27, 2025
- **Last Day to Serve Written Discovery and Deposition Notices (Other Than Experts)**—May 1, 2025
- **Last Day to Serve Opening Expert Reports**—June 5, 2025
- **Last Day to Serve Rebuttal Expert Reports**—July 3, 2025
- **Last Day to Serve Sur-Rebuttal Expert Reports**—July 31, 2025
- **Last Day to Serve Deposition Notices (Experts)**—August 14, 2025
- **Last Day to Move to Amend Complaint**—September 18, 2025 (if motion to amend is granted, parties shall stipulate to discovery schedule related to amendments and adjusted summary judgment related deadlines)
- **Last Day to Hear Discovery Motions**—September 18, 2025
- **Fact and Expert Discovery Cut Off**—October 16, 2025
- **Last Day to File Motions for Summary Judgment and All Other Motions (except *Daubert* and all other Motions in Limine)**—November 13, 2025
- **Last Day to File Oppositions to Motions for Summary Judgment and All Other Motions (except *Daubert* and all other Motions in Limine)**—December 11, 2025
- **Last Day to File Replies in Support of Motions for Summary Judgment and All Other Motions (except *Daubert* and all other Motions in Limine)**—January 8, 2026

16.  Trial

The parties agree that, should a trial be necessary, the Court should hold a bench trial.

**Plaintiff's statement.** As with discovery, the parties and Court should wait for resolution of NetChoice's pending appeal to schedule a trial. Plaintiff intends to file a motion for summary judgment, and any trial date should be scheduled after the Court decides summary judgment motions.

**Defendant's statement.** The Attorney General intends to file a motion for summary judgment. If the case is not resolved at summary judgment, the Attorney General proposes that a trial date be set for three months after the resolution of any motions for summary judgment, including on appeal.

**17.     Disclosure of non-party interested entities or persons**

Plaintiff NetChoice has filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

**Plaintiff's statement.** Pursuant to Civil L.R. 3-15, there is no conflict to report. Pursuant to Civil L.R. 3-15, the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Plaintiff NetChoice is a non-profit entity organized under Section 501(c)(6) of the Internal Revenue Code created in and existing under the laws of the District of Columbia. NetChoice is a national trade association of online businesses that share the goal of promoting free speech and free enterprise on the Internet.

**Defendant's statement.** The Attorney General is not aware of any conflicts or any interested entities or persons subject to disclosure under Civil L.R. 3-15.

**18.     Professional conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: February 28, 2025

|  |  |
|---|---|
| Bradley A. Benbrook (SBN 177786)<br>Stephen M. Duvernay (SBN 250957)<br>**BENBROOK LAW GROUP, PC**<br>701 University Avenue, Suite 106<br>Sacramento, CA 95825<br>Telephone: (916) 447-4900<br>brad@benbrooklawgroup.com<br>steve@benbrooklawgroup.com<br><br>Joshua P. Morrow*<br>**LEHOTSKY KELLER COHN LLP**<br>408 W. 11th Street, 5th Floor<br>Austin, TX 78701<br>(512) 693-8350<br>josh@lkcfirm.com<br><br>Jared B. Magnuson*<br>**LEHOTSKY KELLER COHN LLP**<br>3280 Peachtree Road NE<br>Atlanta, GA 30305<br>(512) 693-8350<br>jared@lkcfirm.com | */s/ Steven P. Lehotsky*<br>Steven P. Lehotsky*<br>Scott A. Keller*<br>Jeremy Evan Maltz*<br>Shannon G. Denmark*<br>**LEHOTSKY KELLER COHN LLP**<br>200 Massachusetts Avenue, NW,<br>   Suite 700<br>Washington, DC 20001<br>(512) 693-8350<br>scott@lkcfirm.com<br>steve@lkcfirm.com<br>jeremy@lkcfirm.com<br>shannon@lkcfirm.com |

* Admitted *pro hac vice*.

*Attorneys for Plaintiff NetChoice*

DATED: February 28, 2025

/s/ Christopher J. Kissel
ROB BONTA, State Bar No. 202668
Attorney General of California
LARA HADDAD, State Bar No. 319630
Supervising Attorney General
JENNIFER E. ROSENBERG, State Bar No. 275496
SHIWON CHOE, State Bar No. 320041
CHRISTOPHER J. KISSEL, State Bar No. 333937
Deputy Attorneys General
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of California*

9
**JOINT CASE MANAGEMENT STATEMENT**